IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GERALD EDMOND PABST | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | |
| | § | NO. 3-11-CV-2311-O-BD |
| RICK THALER, Director | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division | § | |
| | § | |
| Respondent. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Petitioner Gerald Edmond Pabst, a Texas prisoner, has filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons stated herein, the application should be denied.

I.

A jury convicted petitioner of capital murder in connection with the shooting death of Galua Self Crosby during an aggravated sexual assault. Because the state did not seek the death penalty, punishment was assessed at a mandatory life sentence. Petitioner challenged his conviction on direct appeal and state collateral review. The court of appeals affirmed. *Pabst v. State*, No. 05-08-01347-CR, 2010 WL 965742 (Tex. App. -- Dallas, Mar. 18, 2010, pet. ref'd). The Texas Court of Criminal Appeals denied post-conviction relief on the findings of the trial court. *Ex parte Pabst*, WR-74,947-02 (Tex. Crim. App. Apr. 20, 2011). Petitioner then filed this action in federal district court.

II.

As best the court understands his claims, petitioner appears to contend that: (1) the evidence was insufficient to support his conviction; (2) he received ineffective assistance of counsel; (3) the jury charge was defective; and (4) he is actually innocent.[1]

A.

Petitioner contends that the evidence was insufficient to support his conviction because there were no witnesses to the murder, no blood or other physical evidence was recovered from the victim's clothing, and there was no evidence that petitioner shot the victim with a firearm.

1.

A federal court may not disturb a state criminal conviction unless no rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Gibson v. Collins*, 947 F.2d 780, 781 (5th Cir. 1991), *cert. denied*, 113 S.Ct. 102 (1992). The evidence must be viewed in the light most favorable to the verdict. *See Jackson*, 99 S.Ct. at 2789; *Gibson*, 947 F.2d at 781. This standard of review applies in both direct and circumstantial evidence cases. *See Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir.), *cert. denied*, 111 S.Ct. 265 (1990).

Federal courts are bound by state statutes and case law in determining the elements of an offense. *See Foy v. Donnelly*, 959 F.2d 1307, 1314 (5th Cir. 1992). Under Texas law in effect at the time this offense was committed, capital murder was defined as, *inter alia*, intentionally or knowingly causing the death of an individual in the course of committing or attempting to commit

---

[1] In his answer, respondent contends that some of these claims are partially or entirely unexhausted. (*See* Resp. Ans. at 7-10). The court need not decide the exhaustion issue because petitioner is not entitled to habeas relief in any event. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

aggravated sexual assault. *See* TEX. PEN. CODE ANN. §§ 19.02(a)(1) (Vernon 1974) & 19.03(a)(2) (Vernon 1985). A person is criminally responsible for the conduct of another individual if he intentionally "solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense[.]" *Id.*, § 7.02(a)(2) (Vernon 1974). The law of parties applies to capital murder cases, and a trial court may charge the jury on the law of parties even if that theory is not alleged in the indictment. *See English v. State*, 592 S.W.2d 949, 955 (Tex. Crim. App.), *cert. denied*, 101 S.Ct. 254 (1980) (citing cases).

2.

On April 29, 1986, Galua Self Crosby was found dead in her bed at the home she shared with her common-law husband, Doug Graham. (*See* SF-VII at 27-28, 106-09). Crosby had been bound, gagged, beaten, sexually assaulted, and shot three times in the head. (*Id.* at 125-28, 150-57). Petitioner's brother-in-law, Clay Chabot, was charged with the murder after police recovered a .25 caliber firearm, later revealed to be the murder weapon, from his apartment and interviewed petitioner. (*See* SF-VIII at 28-30, 53-54). At Chabot's trial, petitioner testified that he and Chabot went to Graham's house to confront him about a recent drug deal. (*Id.* at 92-93). When they arrived at the house, petitioner and Chabot were met by Crosby, who was home alone. (*Id.* at 95-97). After spending approximately 20 minutes demanding money or drugs from Crosby, petitioner said that Chabot became enraged and brandished a silver .25 caliber pistol. (*Id.* at 97-102). Petitioner testified that Chabot forced Crosby into the bedroom and instructed her to lay on the bed. (*Id.* at 106-07). Chabot then ordered petitioner at gunpoint to tie Crosby's feet with a cloth rope. (*Id.* at 108). After petitioner complied with this demand, Chabot sent him to another room to unhook the cable box from the television. (*Id.* at 111-12, 114). Shortly thereafter, petitioner heard multiple gun shots. (*Id.* at 115).

Based in large part on petitioner's testimony, Chabot was convicted of capital murder and sentenced to life imprisonment. More than 20 years later, new forensic testing indicated that *petitioner*, not Chabot, was a probable contributor of DNA found on the palm of Crosby's left hand and spermatozoa deposited inside her vagina. (*See* SF-IX at 111-17). Petitioner was indicted for capital murder and arrested in Ohio. (*Id.* at 155-56). Upon his arrest, petitioner stated, "I beat this once, I'll beat it again." (*Id.* at 158-59). Petitioner was convicted following a jury trial. Chabot's conviction was vacated on state collateral review because of petitioner's perjured testimony. *See Ex parte Chabot*, 300 S.W.3d 768 (Tex. Crim. App. 2009). In lieu of a retrial, Chabot pled guilty to capital murder and received a lesser sentence.

On direct appeal, the state court determined that the evidence was legally sufficient to support petitioner's conviction for the murder of Crosby during an aggravated sexual assault. *See Pabst*, 2010 WL 965742 at *1-3. In so holding, the appeals court wrote:

> Cassie Johnson, the DNA analyst who conducted the DNA testing ordered by the trial court in response to Chabot's request in 2007, testified that she tested DNA samples from the palm of Crosby's left hand, and from spermatozoa found in Crosby's vagina, against DNA samples from Graham, Chabot, and appellant. The DNA on those samples was consistent with appellant's DNA and eliminated Graham and Chabot as possible contributors of the DNA.
>
> * * * *
>
> [Serologist Carolyn] Van Winkle testified consistently and repeatedly that the condition of the spermatozoa found in Crosby's vagina, and specifically the fact that some of the spermatozoa still had partial tails attached to them, indicated that the spermatozoa were deposited in Crosby's vagina at or near the time of her death. Van Winkle also testified that if the spermatozoa had been deposited, for example, 12 hours prior to Crosby's death, it would have been much less likely that the spermatozoa would still have had partial tails attached.
>
> After viewing all of the evidence in the light most favorable to the prosecution, we conclude that a rational fact-finder could have found

> the elements of capital murder as charged in the indictment beyond a reasonable doubt. As a result, we conclude that the evidence is legally sufficient to support appellant's conviction for capital murder.

*Id.*, 2010 WL 965742 at *3, *citing Barron v. State*, No. 05-94-00103-CR, 1997 WL 732475 at *5 (Tex. App.-- Dallas Nov. 26, 1997, pet. ref'd). This court must defer to the state court decision unless petitioner demonstrates it was based on an unreasonable determination of the facts in light of the evidence presented at trial. *See Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 2001 (2001). Petitioner has failed to meet that heavy burden. Although Chabot pled guilty to capital murder after his original conviction was set aside, Texas law permits an individual to be found responsible as a party if he intentionally "solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense[.]" *See* TEX. PENAL CODE. ANN. § 7.02(a)(2). Here, the direct and circumstantial evidence adduced at trial -- including petitioner's admitted presence in the house at the time of the murder, his inconsistent and perjured statements implicating Chabot, and physical evidence linking him to the sexual assault of the victim near the time of her death -- was sufficient to establish petitioner's guilt under the law of parties.

3.

To the extent petitioner challenges the factually sufficiency of the evidence, such a claim is not cognizable on federal habeas review. Under the law in effect when petitioner's appeal was decided, Texas appellate courts had the authority to review fact questions in criminal cases. *See Clewis v. State*, 922 S.W.2d 126, 129-30 (Tex. Crim. App. 1996).[2] This "factual sufficiency" review of the evidence was broader than a "legal sufficiency" challenge under *Jackson*. *See id.* at 129.

---

[2] In *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010), a plurality of the Texas Court of Criminal Appeals overruled *Clewis* and held that "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Id.* at 895.

Instead of viewing the evidence in the light most favorable to the prosecution and determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt[,]" a factual sufficiency inquiry views all the evidence to determine whether the verdict "is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Pruitt v. Cockrell*, No. 3-00-CV-1713-H, 2001 WL 1115339 at *13 (N.D. Tex. Sept. 14, 2001), *COA denied*, No. 01-11332 (5th Cir. Jan. 18, 2002), *quoting Clewis*, 922 S.W.2d at 129. The power of state appellate courts to review the factual sufficiency of the evidence was derived from Texas statutory and constitutional authority. *Id.*, 2001 WL 1115339 at *14, *citing Clewis*, 922 S.W.2d at 129-30, *and Bigby v. State*, 892 S.W.2d 864, 874-75 (Tex. Crim. App. 1994), *cert. denied*, 115 S.Ct. 2617 (1995). There is no corresponding right of review under the United States Constitution. *Id.*; *see also Moore v. Thaler*, No. 3-10-CV-1005-M-BD, 2011 WL 3555830 at *2 (N.D. Tex. Jun. 20, 2011), *rec. adopted*, 2011 WL 3555786 (N.D. Tex. Aug. 11, 2011), *COA denied*, No. 11-10825 (5th Cir. Mar. 9, 2012); *Daisy v. Dretke*, No. 3-04-CV-2015-D, 2004 WL 3167743 at *2 (N.D. Tex. Dec. 21, 2004) (citing cases), *COA denied*, No. 05-10052 (5th Cir. Nov. 9, 2005).

B.

Next, petitioner contends that he received ineffective assistance of counsel because his attorney: (1) did not object to violations of his Sixth Amendment right to confrontation; (2) failed to challenge the sufficiency of the indictment; (3) did not make an opening statement, effectively cross-examine witnesses, or present an alternative defense; and (4) failed to move for a judgment of acquittal.

1.

The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler v. Sullivan*,

446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980). To prevail on an ineffective assistance of counsel claim, a habeas petitioner must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the petitioner must demonstrate that the performance of his attorney fell below an objective standard of reasonableness. *Id.*, 104 S.Ct. at 2064. Second, the petitioner must prove that he was prejudiced by his attorney's substandard performance. *Id.* at 2067.

Where, as here, a state court has already rejected a claim of ineffective assistance of counsel, a federal court may grant habeas relief only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary" to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir.), *cert. denied*, 124 S.Ct. 2812 (2004), *citing Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 1519-20, 146 L.Ed.2d 389 (2000). A decision constitutes an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 120 S.Ct. at 1523; *see also Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). Factual determinations made by the state court are presumed to be correct and are unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Threadgill v. Quarterman*, No. 3-05-CV-

2217-D, 2009 WL 2448499 at *5 (N.D. Tex. Aug. 10, 2009) (citing cases), *aff'd*, 425 Fed.Appx. 298, 2011 WL 1812764 (5th Cir. May 12, 2011), *cert. denied*, 132 S.Ct. 1095 (2012). This presumption applies not only to explicit findings of fact, but "it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Threadgill*, 2009 WL 2448499 at *5, *quoting Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001), *cert. denied*, 123 S.Ct. 106 (2002); *see also Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011) ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").

2.

Petitioner criticizes his attorney for failing to object to the testimony of Doug Graham, Betty Stenline, and Dr. Jeffrey Barnard. At petitioner's trial, the prosecutor read aloud the testimony of Graham and Stenline from Clay Chabot's murder trial in 1986.[3] Although Dr. Barnard testified in person at petitioner's trial, he summarized the findings of an autopsy report prepared by another doctor and described the contents of crime scene photos. According to petitioner, the testimony of these witnesses violated his Sixth Amendment right to confrontation as interpreted by the Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

The confrontation clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." *Cruz v. New York*, 481 U.S. 186, 189, 107 S.Ct. 1714, 1717, 95 L.Ed.2d 162 (1987), *quoting* U.S. CONST. amend. VI. In *Crawford*, the Supreme Court held that under the confrontation clause, "[t]estimonial statements of witnesses absent from trial [can be] admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford*, 124 S.Ct. at 1369. A

---

[3] Both Graham and Stenline died before petitioner's trial in 2007.

confrontation clause violation is subject to a harmless error analysis. *See Cupit v. Whitley*, 28 F.3d 532, 537-38 (5th Cir. 1994), *cert. denied*, 115 S.Ct. 1128 (1995). The test is whether the constitutional error had a "substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 538, *quoting Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993). Among the factors relevant to this determination are: (1) the importance of the witness's testimony in the prosecution of the case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony; and (4) the overall strength of the prosecution's case. *Id.* at 539.

Even if counsel should have objected to the testimony of absent witnesses, petitioner was not prejudiced thereby. At Chabot's trial, Graham testified that he had met petitioner a few times and received a phone call from him at approximately 5:00 a.m. because "[h]e wanted some speed." (*See* SF-VII at 96, 100-01). This testimony was cumulative of petitioner's written statement, wherein he admitted calling Graham at 4:30 or 5:30 a.m. on the day of the murder to ask for more methamphetamine. (*See* SF-VIII at 49 & St. Exh. 41). It was also consistent with petitioner's testimony that he called Graham at 5:30 a.m. to ask "if he had any more speed." (*See id.* at 91). None of the other testimony by Graham directly implicated petitioner in the Crosby murder or sexual assault. (*See, e.g.* SF-VII at 47-59). Betty Stenline testified that she noticed a "goldish brown" 1970 or 1972 four-door Chevrolet Caprice sedan parked in Crosby's driveway at approximately 7:00 a.m. on April 29, 1986. (*See* SF-VIII at 8-9). When she learned about the murder, Stenline called Crime Stoppers to report the vehicle. (*See id.* at 15). This testimony was cumulative of petitioner's own admission that he was at Crosby's home when she was murdered and that his car was parked in the driveway. (*See id.* at 93-95). Likewise, the autopsy report and crime scene photos summarized by

Dr. Barnard were cumulative of the testimony of two police officers who found Crosby tied-up and on her stomach with three gunshot wounds to the head, and observed bruising and other indications of sexual assault. (*Compare* SF-IX at 9-10, 14-42 *with* SF-VII at 109, 125-28). In view of this evidence, the court cannot say that the admission of the testimony challenged by petitioner, even if erroneous, had a "substantial and injurious effect or influence in determining the jury's verdict." *See Sherman v. Scott*, 62 F.3d 136, 142 & n.6 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 816 (1996) (noting that even if admission of laboratory report violated confrontation clause, federal habeas relief was not warranted where undercover police officer testified that he purchased a substance that all parties to the transaction treated as cocaine and that tested positive for cocaine).

3.

Petitioner also contends that his attorney should have filed a motion to quash the indictment due to the expiration of the statute of limitations for aggravated sexual assault. However, petitioner was charged with capital murder, not aggravated sexual assault. *See Ex parte Pabst*, WR-74,947-02, Tr. at 54. There is no statute of limitations for murder under Texas law. *See* TEX. CODE CRIM. PROC. ANN. art. 12.01(1) (Vernon 1985); *Demouchette v. State*, 731 S.W.2d 75, 80 (Tex. Crim. App. 1986), *cert. denied*, 107 S.Ct. 3197 (1987) (statute of limitations for capital murder is the same as for murder). Any motion to quash the indictment on this ground would have been frivolous. *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997), *cert. denied*, 119 S.Ct. 418 (1998) (failure to make a meritless objection cannot be grounds for ineffective assistance of counsel).

4.

Nor was counsel ineffective for failing to make an opening statement, for not cross-examining witnesses more effectively, for failing to present an alternative defense, and for not

moving for a judgment of acquittal. "The decision of whether to present an opening statement falls with the zone of trial strategy." *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984), *citing William v. Beto*, 354 F.2d 698, 703 (5th Cir. 1965). The *Strickland* standard is highly deferential to strategic choices made by trial counsel. "So long as counsel made an adequate investigation, any strategic decisions made as a result of that investigation fall within the wide range of objectively reasonable professional assistance." *Cotton v. Cockrell*, 343 F.3d 746, 752 (5th Cir. 2003), *cert. denied*, 124 S.Ct. 1417 (2004). A conscious and informed decision on trial tactics cannot form the basis of an ineffective assistance of counsel claim "unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Id.* at 753, *quoting United States v. Jones*, 287 F.3d 325, 331 (5th Cir.), *cert. denied*, 123 S.Ct. 549 (2002).

>   On state collateral review, the trial court explained:
>
>> Applicant has failed to prove how he was harmed by counsel's failure to make an opening statement. Applicant does not state what objections counsel could have made to the prosecutor's recitation of their view of the case. Applicant fails to state what defense was available. During the co-defendant's trial, Applicant admitted being present during the commission of the offense. Further, DNA evidence linked Applicant to the sexual assault of the victim. Accordingly, counsel was not ineffective on the alleged grounds.

*Ex parte Pabst*, WR-74,947-02, Tr. at 50-51, ¶ 1. Petitioner offers no evidence, much less clear and convincing evidence, to rebut those findings. Although petitioner faults his attorney for failing to present a defense based on an alleged consensual relationship with the victim, there is absolutely no evidence to support such a theory. To the contrary, petitioner testified at Chabot's trial that he had been to Doug Graham's residence only three times, did not know how to get there, and had only met Crosby twice. (*See* SF-VIII at 83-84, 94). Similarly, in view of DNA evidence linking petitioner to the sexual assault of the victim and his admitted presence at the murder scene, counsel had no

basis for seeking a judgment of acquittal after the state rested its case-in-chief. *See Burston v. Caldwell*, 506 F.2d 24, 28 (5th Cir.), *cert. denied*, 95 S.Ct. 1995 (1975) ("The failure of petitioner's counsel to move for a directed verdict did not render [counsel's] assistance ineffective where there was possibly sufficient evidence of guilt to support a guilty verdict and no reason to believe that such a motion would be granted.").

C.

Petitioner contends that he received ineffective assistance of counsel because his attorney did not appeal his conviction on certain grounds. "The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be pressed on appeal." *Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.), *cert. denied*, 110 S.Ct. 419 (1989); *see also Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983). Instead, counsel is obligated only to raise and brief those issues that are believed to have the best chance of success. *See Schaetzle v. Cockrell*, 343 F.3d 440, 445 (5th Cir. 2003), *cert. denied*, 124 S.Ct. 1156 (2004); *United States v. Williamson*, 183 F.3d 458, 463 (5th Cir. 1999). In order to prove ineffective assistance of appellate counsel, a petitioner must show that the decision not to raise an issue on appeal fell below an objective standard of reasonableness. *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000), *citing Strickland*, 104 S.Ct. at 2064. This reasonableness standard requires counsel "to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *Id., quoting Williamson*, 183 F.3d at 462.

Counsel raised three points of error on direct appeal: (1) the evidence was legally insufficient to support petitioner's conviction for capital murder; (2) the trial court erred in admitting into evidence statements made by petitioner to investigators prior to his extradition from Ohio; and (3) the trial court erred in admitting inflammatory autopsy photographs of the victim. *See Pabst*, 2010

WL 965742 at *1. Although appellate counsel did not include certain claims advanced by petitioner on state and federal collateral review, there is no reason to believe that petitioner's capital murder conviction would have been reversed had counsel made those claims. *See Coker v. Thaler*, 670 F.Supp.2d 541, 554 (N.D. Tex. 2009), *appeal dism'd*, No. 09-11180 (5th Cir. Jan. 28, 2010) (appellate counsel was not ineffective for failing to appeal conviction on grounds that were considered and rejected on collateral review). This ground for relief should be overruled.

D.

Petitioner challenges the jury charge because it included a duress instruction and an instruction on the law of parties. Improper jury instructions in state criminal trials rarely justify federal habeas relief. *See Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002). In examining such a claim, the "inquiry is not whether there was prejudice to the [petitioner], or whether state law was violated, but whether there was prejudice of constitutional magnitude." *Id.*, *quoting Sullivan v. Blackburn*, 804 F.2d 885, 887 (5th Cir. 1986), *cert. denied*, 107 S.Ct. 1901 (1987). This, in turn, requires the petitioner to prove that the erroneous instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 764-65, *quoting Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct 396, 400, 38 L.Ed.2d 368 (1973).

The inclusion of a duress instruction -- which permitted the jury to consider as an affirmative defense petitioner's claim that he was compelled to commit a crime "by the threat of imminent death or serious bodily injury to himself or another" -- was in no way harmful to petitioner. Regarding the inclusion of an instruction on the law of parties, the state habeas court found:

> The law does not require the indictment to state that the law of parties will be applicable in a case. To instruct the jury on the law of parties, without it being mentioned in the indictment, is not error. Including a parties charge in the jury charge does not lower the State's

>   burden of proof because they still must prove that the defendant acted as a party.

*Ex parte Pabst,* WR-74,947-02, Tr. at 51, ¶ 3; *see also Montoya v. State,* 810 S.W.2d 160, 165 (Tex. Crim. App. 1989), *cert. denied,* 112 S.Ct. 426 (1991) ("It is well accepted that the law of parties may be applied to a case even though no such allegation is contained in the indictment."); *Montoya v. Scott,* 65 F.3d 405, 415 (5th Cir. 1995), *cert. denied,* 116 S.Ct. 1417 (1996) (petitioner not entitled to habeas relief due to inclusion of "law of parties" instruction). This ground for relief should be overruled.

### E.

Finally, petitioner contends that he is actually innocent because, *inter alia*, Chabot pled guilty to capital murder in lieu of a retrial. A claim of actual innocence, standing alone, is insufficient to merit federal habeas relief. *See Dowthitt v. Johnson,* 230 F.3d 733, 741 (5th Cir. 2000), *cert. denied,* 121 S.Ct. 1250 (2001), *quoting Herrera v. Collins,* 506 U.S. 390, 400, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993). There must also be evidence of an independent constitutional violation in the state criminal proceeding. *Id.* No such evidence exists here. *See Anderson v. Maggio,* 555 F.2d 447, 451 (5th Cir. 1977) (confession by another individual is insufficient evidence to establish an independent constitutional violation for habeas purposes).

### **RECOMMENDATION**

Petitioner's application for writ of habeas corpus should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or

recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: June 5, 2012.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE